UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

VICKI SEABROOK, WILLIAM BATISTA,
KELVIN BULLOCK, LAURA BYERSON,
TONY CURTIS, NORMAN GAUVIN,
CHERYL GRANT, ANITRA JONES-REID,
DAVID LU, KATHERINE MIMS, EVORA REEVES,
OGAN, DAOPUYE SIMON, MARVENA STANLEY,
BARBARA WILLIAMS,

**VERIFIED COMPLAINT**

Plaintiffs,

Index No.

- against -

CITY OF NEW YORK;  NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT (HPD); NEW YORK CITY
HOUSING PARTNERSHIP; NEW YORK CITY
DEPARTMENT OF BUILDINGS; JP MORGAN
CHASE; LANDMARK PROJECTS IV, INC.;
SANTA FE CONSTRUCTION; DESMOND EMANUEL,
Individually and in his official capacity,

Defendants.

---------------------------------------------------------------------x

Plaintiffs, by their attorneys, LEEDS, MORELLI & BROWN, P.C. complaining of the

defendants, allege upon knowledge as to themselves and their own actions and upon information

and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

In late 1999, low to middle income minority families were solicited by the New York

City Housing Partnership Development Company and Landmark Projects IV, Inc. with

pamphlets and other literature informing them of an urban renewal program in which several

new townhouses would be built and available for purchase.  Eager to be homeowners, numerous

1

people cashed out their life savings to purchase a brand new Central Harlem Partnership Home. The purchasers were confident that purchasing good homes in a neighborhood they loved would make a difference in their lives.

The New York City Partnership Development Company, along with the New York City Department of Housing Preservation and Development, selected Landmark Project IV, Inc, a subsidiary of Santa Fe Construction Company owned by Desmond Emanuel, to build the homes. The purchasers were comforted in knowing that the involvement of the City's agencies would ensure homes that were safe and constructed in compliance with regulations.

The applicants were steered to JP Morgan Chase for financing and to the Builder's own engineers and attorneys.  When some applicants requested their own attorneys and engineers, their requests were denied by New York City and Landmark.

In 1999 and 2000, many purchasers placed substantial down payments on the homes and were promised a Spring 2001 completion.  However, construction was not completed until 2003, and most occupants were not able to move in until mid to late 2003.  During this three to four year time frame, their payments collected no interest, but rather lay dormant in escrow.

When New York City finally announced the habitability of the buildings, the purchasers were rushed through a shoddy inspection with the City's engineers and sent to closing where they were faced with numerous non-negotiable terms and unexpected last minute fees.

Upon moving in, the Homeowners were faced with a myriad of defects in their homes. Common complaints included leaking roofs, water penetration through the roofs into the individual apartments, mold, deteriorating masonry, improper heat, water pressure, rodents, and garbage, including hypodermic needles and crack vials, in their yards.  The Homeowners quickly

2

contacted Landmark Projects owner, Desmond Emanuel, with their complaints.  Mr. Emanuel failed to respond to the majority of the complaints.  When he did acknowledge the complaints, he sent over inexperienced workers who never remedied the defects.  Consequently, Mr. Emanuel filed for bankruptcy in 2004, and Santa Fe Construction, along with its numerous subsidiaries such as Landmark, were co-debtors.  The Homeowners now knew that it would be a wasted effort to continue to ask Emanuel to repair their homes.

The Homeowners then looked to the City for help.  The New York City Housing Partnership sent over inspectors to assess the damage.  The Housing Partnership informed the Homeowners that they would not provide a contractor to fix the damage and instead made extremely inadequate monetary offers.    The Homeowners were forced to spend thousands to hundreds of thousands of dollars in repairs for their "brand new" homes.   As a result of the constant repairs, none of the Homeowners are able to save money in order to buyout the subsidy, or receive a second mortgage to correct all the defects.  Their entire life savings were exhausted on the Central Harlem Partnership Homes, and now they are forced to live in these intolerable conditions.

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. Section 1983, to redress the deprivation by the Defendants, under the policies, ordinances, custom and usage of all rights, privileges and immunities secured to the Plaintiff by the Fourteenth Amendment to the Constitution of the United States and all the laws and statutes thereunder, as well as New York State Executive Law, Human Rights Law, Section 290, et seq., New York State Civil Rights Law 40-C and Article 1, Section 11, of the New York State Constitution.

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343, the doctrine of pendant jurisdiction and the aforementioned statutory and Constitutional provisions.

3.      Venue is proper pursuant to 28 U.S.C. Section 1391.

## THE PARTIES

4.      Plaintiff Vicki Seabrook is a resident of the State of New York, New York County, and maintains a residence at 228 West 123rd Street, New York, NY, 10027.

5.      Plaintiff William Batista is a resident of the State of New York, New York County, and maintains a residence 37 West 127th Street, New York, NY 10027.

6.      Plaintiff Kelvin Bullock is a resident of the State of New York, New York County, and maintains a residence at 223 West 121st Street, New York, NY 10027.

7.      Plaintiff Laura L. Byerson is a resident of the State of New York, New York County, and maintains a residence at 249 West 122nd Street N, New York, NY 10027.

8.      Plaintiff Tony Curtis is a resident of the State of New York, New York County, and maintains a residence at 47 West 127th Street, New York, NY 10027.

9.      Plaintiff Norman Gauvin is a resident of the State of New York, New York County, and maintains a residence at 108 West 128th Street, New York, NY 10027.

10.      Plaintiff Cheryl Grant is a resident of the State of New York, New York County, and maintains a residence at 45 West 127th Street, New York, NY 10027.

11.      Plaintiff Anitra Jones-Reid is a resident of the State of New York, New York County, and maintains a residence at 227 West 122nd Street, New York, NY 10027.

12.      Plaintiff David Lu is a resident of the State of New York, New York County, and

maintains a residence at 117 West 126th Street, New York, NY 10027.

       13.    Plaintiff Katherine Mims is a resident of the State of New York, New York County, and maintains a residence at 39 West 127th Street, New York, NY 10027.

       14.    Plaintiff Evora Reeves is a resident of the State of New York, New York County, and maintains a residence at 119 West 126th Street, New York, NY 10027.

       15.    Plaintiff Daopuye Simon Ogan is a resident of the State of New York, New York County, and maintains a residence at 233 West 121st Street, New York, NY 10027.

       16.    Plaintiff Marvena Stanley is a resident of the State of New York, New York County, and maintains a residence at 140 West 127th Street, New York, NY 10027.

       17.    Plaintiff Barbara Williams is a resident of the State of New York, New York County, and maintains a residence at 81 West 128th Street, New York, NY 10027.

       18.    Defendant City of New York is a municipal corporation liable for the acts and omissions of its agents and employees.

       19.    Defendant New York City Department of Housing Preservation and Development ("Sponsor") is the City agency with primary responsibility for preserving and developing adequate, decent, sanitary, and safe housing for the City's residents, with its principle place of business located at 100 Gold Street, New York, NY 10038.  N.Y.C. Charter § 1802.

       20.    Upon information and belief, at all times relevant herein, Defendant New York City Housing Partnership ("Sponsor") was and is a non-profit organization established and doing business in the State of New York with primary responsibility for developing new, affordable housing on publicly-owned and privately-owned sites, with its principle place of business located at 450 7th Avenue, Suite 2401, New York, NY 10123.

5

21.     Defendant New York City Department of Buildings is the City Agency with primary responsibility for the maintenance of adequate, decent, sanitary and safe housing for the City's residents, with its principle place of business located at 280 Broadway, 7th Floor, New York, NY 10007.

22.     Upon information and belief, at all times relevant herein, Defendant JP Morgan/Chase ("Chase") was and is a bank entity organized and doing business in the State of New York, with its headquarters located at 270 Park Avenue, New York, NY 10017.

23.     Upon information and belief, at all times relevant herein, Defendant Santa Fe Construction ("Santa Fe") is a partnership organized pursuant to the laws of the State of New York that at all times relevant herein maintained and continues to maintain an office for the transaction of business in the State of New York, with its principle place of business located at 63 Flushing Avenue, Unit 243, Brooklyn Navy Yard, Brooklyn, NY 11205.

24.     Upon information and belief, Defendant Landmark Projects IV, Inc. ("Landmark") is a partnership organized pursuant to the laws of the State of New York that at all times relevant herein maintained and continues to maintain an office for the transaction of business in the State of New York, with its principle place of business located at 250 Park Avenue South, 8th Floor, New York, NY 10003.

25.     Desmond Emanuel was, all times relevant to the matters set forth below, sole-proprietor of Santa Fe Construction and Landmark Projects IV, and is a resident of New York State.

6

## THE CONSTRUCTION

26.    The New York City Department of Housing Preservation and Development and the New York City Housing Partnership selected Landmark Project IV, Inc., ("Landmark") a subsidiary of Santa Fe Construction Company, to build the Central Harlem Partnership Homes.

27.    The Plaintiffs were not involved in the design or construction process which was exclusively managed, from beginning to completion, by the builder under the supervison of the City of New York and its Agencies.

28.    From 2000 to 2003, the Buildings were designed and constructed on and around the Property.

29.    The Central Harlem Partnership Homes are comprised of forty-one (41) townhouses which consist of either two (2) or three (3) family apartments (the "Townhouses"), at premises Fifth Avenue to Frederick Douglass Boulevard (8th Avenue) and 121st Street to 129th Street. (collectively referred to herein as the "Property").

## THE OFFER AND SALE OF THE TOWNHOUSES

30.    In or about late 1999, Landmark sent various pamphlets, brochures, plans and other sales and advertising literature to low to middle income families promoting the sale of the Central Harlem Partnership Homes which were to be built in or about 2000 to 2001.

31.    Commencing in or about 2000, Chase, Landmark, the Sponsors and/or its affiliates entered into purchase agreements with each of the past and present owners of the Townhouses, who each made substantial down payments. (The "Purchase Agreements").

32.    In or about 2003, after years of delays, Chase, Landmark, the Sponsors and/or its affiliates sold Townhouses to past and present owners of the Townhouses.

33.     Defendant Chase has provided federally funded mortgages to the purchasers of the Townhouses through Central Harlem Partnership Homes.

34.     During the time between the entering of contracts of sale, and completion of the Townhouses, applicants were steered to Chase for financing and forced to use Landmark's own engineers and attorneys.  When many of the applicants requested their own attorney or engineers, they were outright denied by New York City and Landmark.

35.     When the Townhouses were completed, applicants were scurried through the inspection and rushed off to a closing where they were faced with a number of non-negotiable terms and unexpected last minute fees.

36.     At this "rushed" closing, residents were required to waive any right to a jury trial and the right to file a Lis Pendens.  Paragraph 29(b) of the Purchase Agreement reads, "Trial by jury in any action, proceeding, or counterclaim arising out of or from this Contract or arising out of or from the Limited Warranty is hereby waived by the Purchaser, and Purchaser agrees that they shall be limited to an action at law (no specific performance) in the event of Seller's breach, and that the right to file a Lis Pendens in any action is waived irrevocably."

37.     Upon inhabiting the Townhouses, the Homeowners found themselves inundated with multiple defects which required thousands of dollars in repairs.

## THE DEFECTS

38.     Upon information and belief, the Property and the Buildings now and at the time of transfer of each of the Townhouses to purchasers, contain the following defects and deficiencies, among others, (collectively referred to herein as the "Defects"):

(a)     Deterioration of the roofs which suffer from, among other things, water

penetration through the roofs into the walls and interiors of the Buildings, and water damage, mold and leaks in the Buildings and individual apartments;

(b)     Deterioration and cracking of the masonry on the Buildings, which suffer from, among other things, deteriorating stoops, water damage to stoops causing loose steps, sidewalks raising and cracking due to improper water drainage; and

(c)     Improper plumbing which causes, among other things, uneven heat, boiler leaks, rust and low water pressure.

39.     Immediately after Owners moved in to their Townhouses, they began to experience problems with the condition and integrity of their apartments.

40.     Defects in Plaintiff Vicki Seabrook's Townhouse include, but are not limited to, uneven heat distribution; lack of insulation in the walls of the first floor of the Townhouse; cracks in the window ledges; floods in the cellar when it rained; the washing machine drain pipe was defective; holes in the kitchen floor; wood floors in the living room separating; faulty telephone jacks; twenty-eight broken window balances causing drafts which led to increased heating bills; poor drainage in the front yard; sidewalks cracking and raising up; and the backyard was never cleaned or seeded as stated in the Purchase Agreement and was polluted with glass, hypodermic needles, cement and bricks.

41.      Defects in Plaintiff William Batista's Townhouse include, but are not limited to, roof leaks; basement leaks; stoop deterioration; improperly installed windows; and uneven heat distribution.

9

42.     Defects in Plaintiff Kelvin Bullock's Townhouse include, but are not limited to, garbage and other debris in his backyard; stoop steps which had separated; cracks in the front sidewalk; the backyard retaining wall needed replacement; insufficient heating; water leaks into the basement; improperly installed locks on the doors; and dysfunctional electrical outlets.

43.     Defects in Plaintiff Laura Byerson's Townhouse included improperly installed windows; windows with missing screens; leaking boiler, heating and sewer pipes; leaking sky light; cracking steps in the front stoop; inoperative telephone jacks and cable box; poor heating, incessant ticking sound in the walls; door handles which get stuck; and polluted, unseeded backyard.

44.     Defects in Tony Curtis's Townhouse include, but are not limited to, no water pressure on the 1st floor; damaged stoop; uneven heat throughout the Townhouse; electrical problems with the intercom; and a polluted, unseeded backyard.

45.     Defects in Plaintiff Norman Gauvin's Townhouse include, but are not limited to, wood floors separating; carpets which were ripped and stained prior to his moving in; stoop steps falling apart; water leaks from the roof and into the basement; insufficient heat; problems with plumbing and electric; mold on the 1st floor; and the backyard filled with construction debris, hypodermic needles, and garbage.

46.     Defects in Cheryl Grant's Townhouse include, but are not limited to, damaged stoops; damage to the front yard wall; insufficient heat; and polluted, unseeded backyard.

47.      Defects in Anitra Jones-Reid's Townhouse include, but are not limited to, toilets that constantly overflowed; electrical problems with the outdoor lighting; substantial gaps in the wooden floor boards; corroding sidewalks; shower pipes on the fourth floor were not corrected

properly; cracking, peeling and splitting walls and ceilings; disconnected drainpipe in the kitchen sink; stoop steps separating from the base and crumbling; excessive drafts through windows; inadequate heat, three inch crack in the bathtub; mold on the building's facade; rusting boiler pipes; water damage to the air conditioner opening on the first floor; and an unseeded, littered backyard.

48.     Defects in David Lu's Townhouse include, but are not limited to, faulty telephone wiring; leaking windows; improper insulation; poor heating; deteriorating, water damaged stoops; the boiler stopped working completely; and garbage throughout the backyard including crack viles and hypodermic needles.

49.     Defects in Katherine Mims's Townhouse include, but are not limited to, a backyard door that was put on backwards and the hinges were on the outside; a decaying stoop; cracked, leaking basement walls; cracks in the bathroom ceiling; none of the three toilets work properly; inadequate heating; electrical problems; skylight leaks; improper weather sealing in windows; boiler problems; and a polluted, unseeded backyard.

50.     Defects in Evora Reaves's Townhouse include, but are not limited to, a heating imbalance throughout the house; electrical problems; water leaks in the basement; the backyard fence was not leveled; windows need to be caulked; no sump cover; stoop steps falling apart; closet shelves falling down; a space between the basement door and the floor; leaking boiler tank; no doorplates on the vestibule door; and the backyard is not seeded and filled with rocks and debris.

51.     Defects in Daopuye Simon Ogan's Townhouse include, but are not limited to, mold throughout the home; uneven heat distribution; broken steps on the stoops; windows that

are not properly sealed; electrical problems; cracks in the front and backyard cement; door locks that were not properly installed; and an unseeded, littered backyard.

52.    Defects in Marvena Stanley's Townhouse include, but are not limited to, broken stoop steps; uneven heat; leaks in the foundation; incorrect window balancing; and unfinished, unseeded, polluted backyard.

53.    Defects in Barbara Williams's Townhouse include, but are not limited to, drafts from the skylight; a water leak and no heat in a master bedroom; uneven heat distribution; damaged stoop steps; electrical and cable problems; and an unseeded, polluted backyard.

54.    Page 26, Paragraph 7 of the Purchase Agreements provides, among other things, "The Builder warrants that, for one year following the Warranty Date, the home will be free from Defects due to failure by the Builder to have constructed the Home in accordance with the specific standards of the Building Code or due to noncompliance by the Builder with the Locally Accepted Building Practices. The above coverage shall include, but not limited to, Builders warranty that the **roof and basement of the Home shall be free from leaks and walkways and driveways shall be free from cracks** in excess of 1/4 inch in width or 1/8 inch in vertical displacement."  The Purchase Agreement goes on to read, "The Builder warrants to the Purchaser that, for two years following the Warranty Date, the **Plumbing System, Electrical System, and Heating/Cooling/Ventilation System of the Home will be free from defects**..."

55.    Soon after inhabiting the Townhouses, several Homeowners made numerous complaints to Landmark concerning the defects in their homes.

56.     Despite Page 26, Paragraph 7 of the Purchasing Agreement, Landmark has done

little to nothing to remedy the defects complained of by the Homeowners.

57.     For example, on March 28, 2004, Plaintiff Vicki Seabrook sent a letter to Desmond Emanuel, owner of Landmark, complaining of multiple defects, including, but not limited to, masonry problems with the stoop and sidewalk, rodent problems, heating issues, and plumbing problems.

58.     Emanuel never responded to this letter.

59.     Several attempts were made by the Homeowners to contact Mr. Emanuel regarding the defects in their homes, but most went unanswered.   When Mr. Emanuel did send construction workers, they were inexperienced, unprofessional, and disrespectful and the defects went unresolved.

60.     For example, one worker identified only as "Q" told one minority female Homeowner that she needed to "get a husband" if she wanted repairs in her home.

61.     Landmark avoided its responsibility of correcting the multiple defects of the Central Harlem Partnership Homes even though they were empowered with such responsibility.

62.     In or around 2003 through 2004, virtually every Homeowner had filed similar grievances and/or claims with Landmark, and have met a similar discourse with respect to receiving any assistance or remedy to their plight.

63.     The slighted Homeowners then sought the assistance of project sponsor,  New York City Housing Partnership Development Corporation.

64.     On July 27 2004, the Homeowners sent the Housing Partnership correspondence asking for, among other things, a detailed action plan and time line regarding when, how and by whom repairs would take place, procedures for reimbursement of repairs covered by the

Warranty, and how to resolve registration and administration issues that were not properly filed.

65.     The Housing Partnership responded by organizing a walk through with a builder to assess and approve needed repairs.   Four months after this walk through, the Housing Partnership sent the Homeowners a letter stating that they could not secure a contractor to make necessary repairs, but they made a monetary offer to cover the repairs.

66.     The offers made by the Housing Partnership were only a fraction of what the Homeowners had already spent, and what they would need for future repairs.

67.     Landmark, Chase, the Sponsors and their affiliates expressly and impliedly represented and warranted, and/or conspired to so represent and warrant, that the Property and the Buildings were in a condition fit and proper for human habitation, that the Property and the Buildings were and would be fit and suitable for the uses for which they were intended, and that the Property and the Buildings contained good and adequate workmanship.

68.     Upon information and belief, Chase, Landmark, the Sponsors, and their affiliates, discriminated against the past and current Homeowners by fraudulently inducing them into purchasing and mortgaging defective Townhouses.

69.     Upon information and belief, Chase, Landmark, the Sponsors and their affiliates, have engaged in a systematic attempt to manipulate and swindle monies from an ownership pool comprised predominantly of minorities.

70.     If not for the race and national origin of the Homeowners and residents of Central Harlem Partnership Homes, Chase, Landmark, the Sponsors, and their affiliates would not have systematically targeted the minority community and schemed to earn their living through selling defective and hazardous homes.

14

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST**
**DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS,**
**NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC**
**HOUSING PARTNERSHIP**

71.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

72.     The City of New York, specifically the Department of Buildings, Department of Housing Preservation and Development and Housing Partnership, wrongfully, knowingly and intentionally, conducted inadequate inspections of Central Harlem Partnership Homes and issued a certificate of occupancy on the Townhouses despite the existence of major structural deficiencies located throughout the building, thereby causing the Homeowners the risk of serious physical injury, as well as constant emotional and mental anguish.

73.     As Homeowners and residents, Plaintiffs have a clear right to the City's enforcement of the housing ordinances, regulations and laws.  Plaintiffs are entitled to the same protection from unsafe and unhealthy conditions provided by the housing laws as Homeowners and residents in any other property in New York City.

74.     The City Defendants have repeatedly refused to inspect Plaintiffs' buildings, notice the many egregious defects and violations present, or ensure that effective and adequate repairs are completed.

75.     In their neglect and abuse of Plaintiffs' homes and buildings, the City defendants were acting under color and pretense of statutes, ordinance, regulations, customs and usages of the City of New York, State of New York, and under color of their authority as administrators, officials and agents of the City of New York.

76.     By their refusal and utter failure to enforce on Plaintiffs' behalf virtually every

15

significant statutory provision intended to ensure the maintenance of safe and healthy housing for New York City residents, the City Defendants have deprived the Homeowners and residents of their right to safe and suitable housing.

77.     In doing so, the City Defendants have deprived the plaintiffs of their rights, privileges and immunities secured to them by the Constitution and laws of the State of New York and the Constitution of the United States of America.

78.     By reason of the above acts and omissions, acting under color of state law, Defendants have intentionally or recklessly abridged and violated Plaintiffs' Federally Protected Rights secured by the Fourteenth Amendments to the Constitution of the United States, as well as 42 United States Code Section 1983, including, but not limited to, their right to Equal Protection under the law.

79.     That by reason of the Defendants' abridgement and violation of Plaintiffs' constitutional rights, they have had to incur the cost of all repairs, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

80.     Furthermore, said conduct on the part of the Defendants was intentional, willful, wanton, reckless and malicious conduct, giving rise to punitive damages

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS, NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC HOUSING PARTNERSHIP

81.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

82.     Because the Department of Housing Preservation and Development, the City

agency primarily responsible for enforcing statutory housing standards, has failed to perform

those duties in Plaintiffs' housing, Plaintiffs, and those they represent, unlike homeowners in

wealthier, predominantly White neighborhoods, have no agency independent of their Sponsor for

securing the protections of the housing laws that are intended for the protection of all

homeowners and residents of multiple dwellings.

83.     Defendants' abdication of their responsibilities as enforcer of the statutory codes

governing housing conditions and the offer and sale of property, is inherently unfair and biased,

denying Plaintiffs adequate recourse to correct conditions that are violations of the statutory

codes governing housing conditions, to enforce the warranty of habitability, and to not be

subjected to conditions that are dangerous to their life, health and safety.

84.     Defendants' policies and practices, in failing to provide Plaintiffs adequate, fair,

and effective process to effectuate their rights, as residents and the purchasers of property,

violate the due process clauses of the United States and New York Constitutions.

**AND AS FOR A THIRD CAUSE OF ACTION AGAINST
DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS,
NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC
HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK PROJECTS IV, INC.,
SANTA FE CONSTRUCTION**

85.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

86.     Defendants preyed upon minorities and their unfortunate financial circumstances

in order to profit.

87.     Defendants promised Plaintiffs safe, well-developed homes which were

guaranteed with a Warranty.  Defendants pilfered Plaintiffs' lifetime savings in exchange for

empty promises and useless Warranties.

88.     Defendants have been unjustly enriched and Plaintiffs are entitled to restitution.

**AND AS FOR A FOURTH CAUSE OF ACTION AGAINST
DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS,
NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NEW
YORK CITY HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK
PROJECTS IV, INC., SANTA FE CONSTRUCTION**

89.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

90.     Defendants promised Plaintiffs brand new Townhouses built by a financially

secure, competent builder.

91.     Defendants promised that the Townhouses would be free of defects and built in

compliance with Building Codes and locally accepted building practices.

92.     Defendants promised any defects would be repaired by the builder.

93.     Based on these promises, Plaintiffs agreed to purchase the Townhouses.

94.     Contrary to the promises made to the Plaintiffs, the buildings were not built in

compliance with Building Codes and locally accepted building practices, were not free of

defects, and said defects were not repaired by the Defendants.

95.     As a result of the fraudulent information provided to the Plaintiffs by the

Defendant to induce them to purchase the Townhouses, the Plaintiffs have been damaged.

**AND AS FOR A FIFTH CAUSE OF ACTION AGAINST
DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS,**

**NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK PROJECTS IV, INC., SANTA FE CONSTRUCTION**

96.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

97.     Defendants included in the Plaintiffs' Purchase Agreements that the Townhouses would be free of defects and built in compliance with Building Codes and locally accepted building practices.

98.     Defendants included in the Plaintiffs' Purchase Agreements that any defects would be repaired by the builder.

99.     Contrary to the terms of the Purchase Agreements, the buildings were not built in compliance with Building Codes and locally accepted building practices, were not free of defects, and said defects were not repaired by the Defendants.

100.    As a result of the Defendants' breach of contract, the Plaintiffs have been damaged.

**AND AS FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS, NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK PROJECTS IV, INC., SANTA FE CONSTRUCTION**

101.    Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

102.    Defendants expressly warranted to plaintiffs that their homes would be provided as specified.

103.    Defendants breached those warranties by failing to provide homes to plaintiffs in

19

conformity with the promises made and failing to correct any deficiencies involving the homes and/or property.

103. Plaintiffs notified the defendants of their breach of warranty and demanded cure prior to the commencement of this action.  The defendants have refused to cure the breach.

104. As a result of the Defendants' breach of expressed warranty, the Plaintiffs have been damaged.

### AND AS FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS, NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK PROJECTS IV, INC., SANTA FE CONSTRUCTION

106. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

107. Plaintiffs reasonably expected that their homes would be provided as specified and be of workmanlike construction and habitability.

108. Defendants breached those warranties by failing to provide homes and/or properties to plaintiffs in conformity with the standards of workmanlike construction and habitability.

109. Plaintiffs notified the defendants of their breach and demanded cure prior to the commencement of this action.  Defendants have refused to cure the breach.

110. As a result of the Defendants' breach of implied warranty of habitability of Plaintiffs, the Plaintiffs have been damaged.

### AND AS FOR A EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS, NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC

20

**HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK PROJECTS IV, INC.,
SANTA FE CONSTRUCTION**

111.    Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

112.    Defendants knew that the terms in the Purchase Agreements and other promises made to Plaintiffs would not and could not be fulfilled, yet still extorted the Plaintiffs' hard-earned money.

113.    As a result of the Defendants' conspiracy to defraud Plaintiffs, the Plaintiffs have been damaged.

**AND AS FOR A NINTH CAUSE OF ACTION AGAINST
DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS,
NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC
HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK PROJECTS IV, INC.,
SANTA FE CONSTRUCTION**

114.    Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

115.    Plaintiffs received government funded subsidies to purchase the Townhouses.

116.    Plaintiffs were targeted by the Defendants because of their race, color and national origin.

117.    Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d <u>et. seq.</u>, prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.

118.    Based on the foregoing, Defendants' treatment of Central Harlem Partnership Homes owners and residents is a clear violation of Title VI, 42 U.S.C. § 2000d, <u>et. seq.</u>

119.    Furthermore, said actions on the part of the Defendants were intentional, willful and malicious, giving rise to punitive damages.

120.    By reason of Defendants' discrimination against Plaintiffs, the Plaintiffs have suffered  great pain, humiliation and mental anguish.

**AND AS FOR A TENTH CAUSE OF ACTION AGAINST DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS, NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK PROJECTS IV, INC., SANTA FE CONSTRUCTION**

121.    Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

122.    Plaintiff represents homeowners who purchased Central Harlem Partnership Homes.  Said individuals are minorities.

123.    As minorities, these Homeowners are members of a class protected under the Human Rights Law.

124.    If not for the national origin of these Homeowners and residents of Central Harlem Partnership Homes, Defendants would not have neglected their duties under the law and engage in such blatant discriminatory conduct.

125.    Under New York State Executive Law Section 290 et seq., the Human Rights Law, it is unlawful to "discriminate against any person because of race, creed, color, national origin, sex, age, disability, marital status, or familial status in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith."

22

126.    Based on the foregoing, Defendants' treatment of Central Harlem Partnership Homes owners and residents is a clear violation of the Human Rights Law.

127.    Upon information and belief, defendant has intentionally discriminated against Plaintiffs based on national origin in violation of  New York State Executive Law, Human Rights Law, Section 290 et seq.

128.    The Defendants' fraudulent offering and sale of defective Townhouses, and their failure to detect and remedy the egregious defects of Central Harlem Partnership Homes is without just and reasonable cause and constitutes an unlawful discriminatory practice in violation of New York State Executive Law, Human Rights Law, Section 290 et seq.

129.    Furthermore, said actions on the part of the Defendants were intentional, willful and malicious, giving rise to punitive damages.

130.    By reason of Defendants' discrimination against Plaintiffs, the Plaintiffs have suffered  great pain, humiliation and mental anguish.

**AND AS FOR A ELEVENTH CAUSE OF ACTION AGAINST DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS, NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK PROJECTS IV, INC., SANTA FE CONSTRUCTION**

131.    Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

132.    By the actions described above, the Defendants discriminated against Plaintiffs on the basis of race, color, and/or national origin in the terms, conditions, or privileges of the sale of housing accommodations and/or the furnishing of facilities or services in connection therewith in

23

violation of Title 8 of the Administrative Code of the City of New York.

**AND AS FOR A TWELFTH CAUSE OF ACTION AGAINST DEFENDANTS THE CITY OF NEW YORK, NYC DEPARTMENT OF BUILDINGS, NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, NYC HOUSING PARTNERSHIP, JP MORGAN CHASE, LANDMARK PROJECTS IV, INC., SANTA FE CONSTRUCTION**

133.    The marketing and sale of residential real estate by Defendants is a consumer-oriented act or practice which is covered by New York General Business Law § 349.

134.    The deceptive conduct of the Defendants is materially misleading and/or is likely to deceive and mislead plaintiffs in violation of New York GBL § 349.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment on their first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth causes of action directing defendants to compensate plaintiffs for economic loss, humiliation, embarrassment, physical and emotional distress, and mental anguish caused by defendants' violations of the law alleged in this Complaint,  together with the costs and disbursements of this action, including reasonable attorney's fees, punitive damages in an amount that would punish defendants for the willful, wanton and reckless misconduct alleged in this Complaint and would effectively deter defendants from future similar behavior, liquidated damages and any such other and further relief as to the Court may seem just and proper.

Dated: Carle Place, New York
        December 22, 2005

Respectfully submitted,


LEEDS, MORELLI & BROWN, P.C..

One Old Country Road

Carle Place, New York 11514

(516) 873-9550


By: _____

_____Joanna Dinolfo (JD-1106)

James Vagnini (JV-2163)