UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VICKI SEABROOK, et al.,                              05 Civ. 10760 (RJH)

        Plaintiffs,                        **MEMORANDUM OPINION
                                                             AND ORDER**

    - against -

CITY OF NEW YORK, NYC HOUSING
PARTNERSHIP DEVELOPMENT FUND CO.,
JPMORGAN CHASE BANK, N.A., et al.,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Plaintiffs, fourteen homeowners, bring suit alleging a series of constitutional violations and state law torts against various public and private defendants arising out of the purchase of government-subsidized homes located in central Harlem in Manhattan. Defendants City of New York ("the City"), NYC Partnership Housing Development Fund Company ("the Partnership"), and JPMorgan Chase Bank, N.A. ("Chase") separately move to dismiss plaintiffs' Complaint under Rule 9(b), 12(b)(6), and 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motions are GRANTED.

## BACKGROUND

        The facts, as stated in plaintiffs' Complaint, are as follows. In late 1999, low and middle income families were solicited by the Partnership, a non-profit organization dedicated to increasing the availability of affordable housing and home ownership amount lower income residents, and Landmark Project IV, Inc. ("Landmark"), a development company, to participate in the Central Harlem Partnership. The Central

Harlem Partnership is comprised of forty-one townhouses consisting of either two or three family apartments located between Fifth and Eighth Avenue and 121st and 129th Street. The New York City Department of Housing Preservation and Development ("HPD") and the Partnership had selected Landmark to construct homes as part of the Central Harlem Partnership. (Compl. ¶ 26.) The homes were constructed between 2000 and 2003. (Compl. ¶¶ 28–29.) Beginning in 2000, plaintiffs entered into purchase agreements with Landmark and the Partnership and made downpayments on new homes with the understanding that they would be ready by 2001.[1] (Compl. ¶¶ 30–31.) Plaintiffs were then "steered to Chase for financing and forced to use Landmark's own engineers and attorneys." (Compl. ¶ 34.) Plaintiffs state that requests for independent attorneys and engineers were denied by the City and Landmark, but it is unclear whether they were seeking to have such professionals provided without charge, or merely for permission to utilize them at their own expense.

Upon completion of the apartments, plaintiffs allege that the City conducted inadequate inspections of the homes and wrongfully issued Certificates of Occupancy ("C of O's"). (Compl. ¶ 72.) After the C of O's issued, in 2003, each plaintiff was "scurried through the inspection and rushed off to a closing where [he or she was] faced with a number of non-negotible terms and unexpected last minute fees." (Compl. ¶ 35.) However, the terms of the closing were set forth in the purchase agreements, which had been signed by plaintiffs years earlier. Upon entering the premises, plaintiffs discovered numerous defects requiring substantial outlays of money for repair. (*See* Compl. ¶¶ 40–

---

[1] Although plaintiffs do not attach the purchase agreements to the complaint, they rely on the agreements in several causes of action and thus the Court may consider them on a Rule 12(b)(6) and 12(c) motion. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effects, which renders the document integral to the complaint.").

2

53.) Defects included, among other things, deteriorating roofs and masonry, improper plumbing, defective heating, and electrical problems.  Landmark, the builder who constructed and sold the townhouses, had warranted against many such defects.  Despite numerous complaints, however, Landmark did little to nothing and eventually its sole proprietor, Desmond Emanuel, filed for bankruptcy, with Landmark and its parent company and a defendant in this action, Santa Fe Construction, as co-debtors.[2]  Plaintiffs next sought help from the Partnership, which organized a site visit by a contractor, but later informed plaintiffs that it could not secure a contractor for the necessary repairs.  (Compl. ¶ 65.)  They made a monetary offer, but it was "only a fraction" of what was necessary.  (Compl. ¶¶ 65–66.)  Plaintiffs were forced to spend large sums of money to repair their new homes.

Plaintiffs further allege that the City "repeatedly refused to inspect" their buildings and notice the many defects, and otherwise to enforce municipal housing regulations.  (Compl. ¶¶ 74, 76.)  Plaintiffs, "unlike homeowners in wealthier, predominately White neighborhoods, have no agency . . . for securing the protections of the housing laws."  (Compl. ¶ 82.)  Plaintiffs allege that Landmark, Chase, the City, and the Partnership "expressly and impliedly represented and warranted" that the homes were fit for human habitation and "fraudulently induc[ed] them into purchasing and mortgaging defective Townhouses."  (Compl. ¶¶ 67, 68.)

Based on these events, plaintiffs state twelve causes of action against various defendants.  The first, second, and ninth causes of action allege violations of the Due Process Clause, the Equal Protection Clause, and Title VI of the Civil Rights Act of 1964,

---

[2] Defendants Landmark, Emanuel, and Santa Fe Construction have not answered or otherwise responded to the complaint.

42 U.S.C. § 2000d (2006).  Plaintiffs stipulated to dismiss these federal claims against defendants Chase and the Partnership, but maintain them against the City.  The remaining causes of action allege state law claims, sounding in fraud, breach of contract, state and city discrimination law, and state business law.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted).   Pursuant to Fed. R. Civ. P. Rule 8(a), the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957) (complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.").  The complaint "does not need detailed factual allegations," yet it "requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007).  Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 1965; *see also Iqbal v. Hasty*, No. 05-5768, 490 F.3d 143, 2007 U.S. App. LEXIS 13911, at *35 (2d Cir. June 14, 2007) (plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

The Court is generally limited to "the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s]

4

possession or of which plaintiff[] had knowledge and relied in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Because plaintiffs rely on the purchase agreements in bringing suit, the Court may consider them on this motion.

The standard for reviewing a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is analogous to the standard under Rule 12(b)(6). *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). The Court must determine whether "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs. v. International Union*, 47 F.3d 14, 16 (2d Cir. 1995). As with a 12(b)(6) motion to dismiss, the issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

## DISCUSSION

### I.     Constitutional Claims

The first and second causes of action allege various constitutional injuries against the City. These include deprivation of plaintiffs' "right to safe and suitable housing," deprivation of the "rights, privileges and immunities secured" by the Constitution, violation of the Fourteenth Amendment, both the Equal Protection Clause and the Due Process Clause. The Court interprets these claims as being brought pursuant to 42 U.S.C. § 1983[3] for the violation of constitutional rights by state actors. Section 1983 "is not itself a source of substantive rights," but "merely provides a method for vindicating

---

[3] 42 U.S.C. § 1983 provides: "Every person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5

federal rights elsewhere conferred." *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (citations and internal quotation marks omitted). The two federal rights arguably implicated by plaintiffs' Complaint are the right to equal protection and the right to due process. The Court addresses each in turn.

### A. Equal Protection

Plaintiffs' first cause of action alleges that the City violated the Equal Protection Clause of the Fourteenth Amendment by failing to enforce "virtually every significant statutory provision intended to ensure the maintenance of safe and healthy housing," "conduct[ing] inadequate inspections, . . . and issu[ing] a certificate of occupancy." (Compl. ¶¶ 72, 76.) They also rest this claim on the continued refusal "to inspect Plaintiff's buildings, notice the many egregious defects and violations present, or ensure that effective and adequate repairs are completed." (Compl. ¶ 74.) Plaintiffs vaguely allege that the "ownership pool" of the Central Harlem Partnership houses is comprised "predominately of minorities." (Compl. ¶ 69.) However, no plaintiff alleges that he or she is a minority or if so, to what protected class he or she belongs.

The Equal Protection Clause requires the government to treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). While the typical equal protection claim concerns discrimination based on membership in a protected class, where, as here, a plaintiff does not actually allege membership in such a class,[4] she can still prevail under a "class of one" equal protection claim. *Village of*

---

[4] While plaintiffs make vague allegations that they are minorities (*see* Compl. ¶ 122), they do so in the context of causes of action relying on New York state anti-discrimination laws and in their opposition brief rely on a "class of one" equal protection claim. In any event, they cannot state an equal protection claim on the grounds of race because they fail to allege that any differential treatment was based on their membership in a protected class. *See LaTrieste Rest. & Cabaret v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (necessary element of equal protection claim is that differential treatment was based on "impermissible considerations such as race").

6

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a "class of one" claim under *Olech*, plaintiffs must allege: (1) that they were intentionally treated differently from other similarly situated individuals; and (2) that the disparate treatment was either (a) "irrational and wholly arbitrary" or (b) motivated by animus.[5] *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499–500 (2d Cir. 2001). Plaintiffs fail to satisfy either prong.

First, plaintiffs fail to specifically identify what actions defendants wrongfully took or neglected to take with respect to each individual plaintiff. The instant action is not a class action and each plaintiff must make individualized factual allegations that identify the treatment that he or she claims was disparate. To the extent the equal protection claim is based on the wrongful issuance of a C of O, or the derivative failure to conduct proper inspections prior to the issuance of the C of O, individual plaintiffs have not adequately alleged such conduct. While each plaintiff lists defects in his or her own property (*see* Compl. ¶¶ 40–53), they do not allege, as they must, that such defects existed at the time of the inspection and issuance of the C of O and should have precluded the issuance of the C of O in each instance. To the extent the equal protection claim is based on the failure of the City to perform inspections of plaintiffs' properties after they took possession, plaintiffs cannot claim any injury-in-fact resulting from the HPD's failure to issue citations against plaintiffs themselves. *See Lujan v. Defenders of*

---

[5] A selective enforcement equal protection claim based on a showing of animus or "malicious or bad faith intent" was available even before *Olech* created a class of one equal protection claim based on "irrational and wholly arbitrary" governmental conduct. While the Second Circuit has repeatedly deferred the question of whether *Olech* eliminated the inquiry into defendant's bad faith intent, *see Harlen*, 273 F.3d at 499–500, district courts have generally assumed that it did and allowed a "class of one" claim to proceed based only on the government's arbitrary conduct. *See, e.g.*, *Morningside Supermarket Corp. v. NY State Dept. of Health*, 432 F. Supp. 2d 334, 340–41 (S.D.N.Y. 2006).

*Wildlife*, 504 U.S. 555, 560–561 (1992). Therefore, they lack standing to assert a claim that the City failed to enforce housing regulations after they occupied the townhouses.

Second, plaintiffs fail to adequately identify any similarly situated individuals who were treated differently. In a class of one claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis*, 409 F.3d 100, 104–05 (2005) (standard is "whether they are *prima facie* identical."). The Court notes, however, that at the pleading stage, plaintiff need not identify "actual instances where others have been treated differently"; it is sufficient to make more general allegations that similarly situated people have been treated differently. *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2003); *see also Cohn v. New Paltz Cent. Sch. Dist.*, 171 Fed. Appx. 877, 878 (2006). Nevertheless, the only allegation even suggesting a similarly situated class states that "unlike homeowners in wealthier, predominately White neighborhoods, [plaintiffs] have no agency . . . for securing the protections of the housing laws." (Compl. ¶ 82.) Even under a generalized pleading standard, such a tangential allegation clearly fails to identify any similarly situated individuals who were treated differently. Absent from the Complaint are any direct allegations that the City declined to issue C of O's with respect to other homes that suffered from the same defects as did plaintiffs' homes. This complete failure to allege actual disparate treatment with respect to a similarly situated class is grounds for dismissing the equal protection claim.[6] *See Colandrea v. Town of Orangetown*, 490 F.

---

[6] In some cases, a Court can infer from specific factual allegations that defendants were treating plaintiff differently from other similarly situated individuals even where it is not directly stated. *See DeMuria*, 328 F.3d at 707 (sustaining complaint in which plaintiffs stated that they were subjected to different standard of police protection than that afforded to other residents *and* where factual allegations supported conclusion that defendant's conduct was in violation of his duties as police officer). In this case, however, plaintiffs have made no such factual allegations from which the Court could infer that the City was treating them differently from other similarly situated New York City residents. The generalized allegations that

Supp. 2d 342, 349 (S.D.N.Y. 2007) ("Plaintiff's equal protection claim here fails because the complaint fails to allege any similarly situated class of persons with respect to whom she was treated differently."); *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 431 (S.D.N.Y. 2004) (dismissing equal protection claim where "complaint does not allege that Plaintiffs were similarly situated compared to the other citizens who were" treated differently).

Third, "class of one" plaintiffs must show "intentional disparate treatment," in that defendants "knew that they were treating [plaintiffs] differently from anyone else." *Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001). There are no allegations whatsoever suggesting that the City knew the identity of plaintiffs or had any knowledge that housing regulations were being enforced differently as to them. Plaintiffs merely allege that the City "wrongfully, knowingly, and intentionally" conducted inadequate inspections and issued C of O's. (Compl. ¶ 72.) While this allegation may be sufficient to suggest that the City intentionally treated them in the ways alleged, it is an insufficient allegation that the City intentionally treated them differently from anyone else (whoever that may be). Nor are there any factual allegations in the Complaint from which it can be inferred that the disparate treatment was imposed intentionally. *See Cohn*, 171 Fed. Appx. at 879–80.

Finally, and most importantly, plaintiffs fail to allege that the governmental action was "irrational and wholly arbitrary" or motivated by animus toward plaintiffs. Plaintiffs have not alleged, even in conclusory terms, that there was no rational basis for any difference in treatment in enforcing housing regulations. Nor have they alleged that the

---

plaintiffs "have no agency . . . for securing the protections of housing laws," is not a substitute for allegations of actual disparate treatment. (Compl. ¶ 82.)

9

difference in treatment in enforcing housing regulations was the product of "malicious or bad faith intent to injure" them. *LaTrieste Rest. & Cabaret v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders*, 627 F.2d 606, 608–10 (2d Cir. 1980). Plaintiffs' bare allegation, in the context of seeking punitive damages, that the City's conduct was "intentional, willful, wonton, reckless, and malicious" is insufficient. (Compl. ¶ 80.) Plaintiffs equal protection claim must fail in the absence of allegations by each plaintiff as to what conduct is at issue, what similarly situated individuals were treated differently, and how the City's conduct was irrational or motivated by animus.[7] Therefore, the Court dismisses plaintiffs' equal protection claim against the City.

### B.     Substantive Due Process

In order to state a substantive due process claim for deprivation of property, "a party must *first* establish that he had a valid 'property interest' in a benefit that was entitled to constitutional protection." *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 211–12 (2d Cir. 1988)); *see also West Farms Assoc. v. State Traffic Com.*, 951 F.2d 469, 472 (2d Cir. 1991) ("[A] plaintiff may not successfully claim a deprivation of property without due process absent the identification of a protected property interest.").[8] For a property interest to be protected by the Due Process Clause, "a person clearly must have more than an abstract need or desire for it," or even a "unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972);

---

[7] The Court notes again that the present action is not a class action and individual plaintiffs are not relieved from the pleading requirements necessary to support each of their individual claims.

[8] The second element, which the Court does not reach in its analysis, requires that "the defendants infringed that property interest in an arbitrary or irrational manner." *Harlen Assocs.*, 273 F.3d at 503.

10

*see also Harlen Assocs.*, 273 F.3d at 504 (applying a "strict entitlement test"). Such entitlement must be created and defined by sources independent of the Constitution, such as state or local law. *See Bd. of Regents*, 408 U.S. at 577.

The analysis as to whether plaintiffs have a "legitimate claim of entitlement" to a particular benefit "must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case." *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989); *see also Zahra*, 48 F.3d at 680 ("[A]nalysis focuses on the extent to which the deciding authority may exercise *discretion* in arriving at a decision."). "Where a regulator has discretion with regard to the benefit at issue, there normally is no entitlement to that benefit." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994); *see also Villager Pond, Inc.*, 56 F.3d at 378 ("[C]lear entitlement, and, in turn, a constitutionally protected property interest, exists only when 'the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured.'" (quoting *RRI Realty Corp.*, 870 F.2d at 918)). The question of whether there exists a protected property interest will normally be a matter of law for the court to decide. *RRI Realty Corp.*, 870 F.2d at 918.

The allegations in the Complaint identify two distinct roles played by the City, as developer and regulator. The Complaint apparently bases the due process claim on the latter role. While not clearly articulated, plaintiffs appear to argue that the New York City Charter creates a property interest in (1) proper enforcement of housing regulations and adequate home inspections, and (2) issuance of Certificates of Occupancy only upon compliance with applicable regulations.

### 1. Property Interest in Enforcement of Regulations and Execution of Building Inspections

Plaintiffs allege an "utter failure [by the City] to enforce on Plaintiffs' behalf virtually every significant statutory provision intended to ensure the maintenance of safe and healthy housing" and describe "a clear right to the City's enforcement of the housing ordinances, regulations and laws." (Compl. ¶¶ 73, 76.) They further allege that the City "conducted inadequate inspections" and "refused to inspect Plaintiffs' buildings." (Compl. ¶¶ 72, 74.) Plaintiffs contend that the independent source of this protected property interest is New York City Charter § 243, which provides: "The [D]epartment [of Buildings] shall enforce, with respect to buildings and structures, such provisions of the building code . . . and other laws, rules and regulations as may govern the construction, alteration, maintenance, use, occupancy, safety, sanitary conditions, mechanical equipment and inspection of buildings or structures in the city."

Because the New York City Charter does not deprive the City of all discretion in the enforcement of housing regulations and the performance of building inspection, it does not create a protected property interest. *See Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 176 (2d Cir. 1991) ("discretion over the conferral of a governmental benefit . . . is fatal to a claim of entitlement to that benefit"). The Charter is merely a general grant of authority, outlining the "functions" of the Department of Buildings; it does not impose a non-discretionary duty to perform a certain number or quality of inspections, or enforce each and every building regulation and provision in any particular way.[9] Under

---

[9] Even if this regulation established a generalized obligation to enforce regulations or perform inspections, it does not create an absolute duty running to individual plaintiffs. *See Wooters v. Jornlin*, 477 F. Supp. 1140, 1146, 1148 (D. Del. 1979) (dismissing due process claim based on failure to competently perform housing inspection because there was neither an absolute duty to perform the inspections, nor a duty owed

plaintiffs' logic, each time an agency, whose duties are defined in the N.Y.C. Charter, fails to satisfy an obligation or improperly undertakes a responsibility, it constitutes a due process claim. The Constitution does not support such an invasion of the daily workings of elected officials and administrative agencies. Instead, "[g]overnment officials . . . generally are given broad discretion in their decisions whether to undertake enforcement actions." *Gagliardi v. Village of* Pawling, 18 F.3d 188, 192 (2d Cir. 1994); *cf. DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1988) ("The [Due Process] Clause is phrased as a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security."). Therefore, plaintiffs fail to state a due process claim based on these allegations.

### 2. Property Interest in Non-Issuance of Certificates of Occupancy

Next, plaintiffs allege that the City violated their due process rights by improperly "issu[ing] a certificate of occupancy on the Townhouses despite the existence of major structural deficiencies located throughout the building." (Compl. ¶ 72.) Absent this due process violation, plaintiffs argue, they would have received a properly constructed home. (Pls.' Opp'n 8.) Again, plaintiffs argue that their "legitimate claim of entitlement" derives from the New York City Charter, which bestows on the Commissioner of the Department of Buildings the power "to issue certificates of occupancy for any building or structure situated in the city, provided that . . . a certificate of occupancy of a building or structure shall certify that such building or structure conforms to the requirements of all laws, rules, regulations and orders applicable to it." N.Y.C. Charter § 645. While plaintiffs refer to the wrong source, they appear to be

---

to the individual plaintiffs); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) ("The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law.").

13

correct that a C of O may not issue except to a properly constructed home. The New York Building Code provides for a C of O to be issued "[i]f the building is entitled to the certificate of occupancy . . . . Otherwise, the application shall be rejected." N.Y.C. Admin. Code 27-222(a). If a building does not conform to the requirements for a certificate of occupancy, the Commissioner has no discretion to issue one. *See Garrett v. Holiday Inns, Inc.*, 447 N.E.2d 717, 721 (N.Y. 1983). For purposes of the motion to dismiss, the Court assumes that the wrongful issuance of a C of O violates municipal code.

However, "the mere violation of a state law does not automatically give rise to a violation of federal constitutional rights." *Zahra*, 48 F.3d at 682. A plaintiff can claim a due process violation where a C of O was wrongfully *withheld*, at least where plaintiff can show a clear entitlement to a C of O under state law. *See O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007) (recognizing but denying substantive due process claim because plaintiff failed to show clear entitlement to issuance of C of O). The injury in such a case is apparent; where a C of O is withheld, the owner of a property is affirmatively deprived of the use of the property by the government. *See, e.g.*, N.Y.C. Admin. Code § 26-222 ("It shall be unlawful to occupy or use any building . . . unless and until a certificate of occupancy shall have been issued by the commissioner.").

In contrast, plaintiffs here allege that the City wrongfully *issued* C of O's,[10] allowing them to purchase defective homes. This claim cannot sustain a substantive due process violation because the issuance of a C of O, even if in violation of municipal code,

---

[10] Not surprisingly, there are few due process claims based on the wrongful issuance of C of O's. In one such case, *Bletter v. Inc. Vill. of Westhampton Beach*, 88 F. Supp. 2d 21 (E.D.N.Y. 2000), the Court denied such a claim, although it did so after reinterpreting it as a claim of a property interest in proper certification procedures. *Id.* at 25. Citing *Zahra*, the court found that there is no property interest in the procedures leading up to the issuance of a C of O. *Id.*

14

does not cause an injury attributable to the government that rises to a constitutional level. Unlike the case where a C of O is wrongfully withheld, the City did not affirmatively deny plaintiffs any benefit or cause plaintiff any harm. If the city had withheld the C of O's, plaintiffs would not, as they claim, have received a house built to code, but rather would not have been able to purchase the home at all. Plaintiffs' injuries were the product of defective construction of the homes, and the breach of contract by the developer, not the actions of the government. Plaintiffs' claim proceeds on the flawed assumption that the issuance of a C of O makes a municipality *constitutionally* responsible for all harms flowing from defects in a building, even if caused by private parties. This is simply not the case.[11] A municipality is responsible for injuries caused by its actions, and even the wrongful issuance of a C of O does not cause an injury to the recipient attributable to the government, let alone an injury rising to a constitutional level. To the contrary, it bestows a clear benefit on the recipient. Therefore, the wrongful issuance of a C of O, even if in violation of municipal code, does not amount to a due process violation.[12]

## II.     Title VI of the Civil Rights Act

Section 601 of Title VI of the Civil Rights Act of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from

---

[11] While the city may not be *constitutionally* liable for plaintiffs' alleged injuries, it is possible that plaintiff could have a state remedy. Plaintiffs could seek redress under state tort law for foreseeable injury flowing from the wrongful issuance of a C of O. *See Garrett*, 447 N.E.2d at 721 (reversing dismissal of complaint by property owners seeking damages from town for foreseeable injuries flowing from issuance of C of O despite "known, blatant, and dangerous violations"); *Hill v. Middleton*, 549 N.Y.S.2d 918 (N.Y. Sup. Ct. 1989) (denying motion to dismiss tort claim against municipality for negligently issuing C of O).

[12] Even if the Court found that plaintiffs had a protected property interest in the non-issuance of a C of O, they have failed to adequately allege that this property interest was infringed in an "arbitrary and irrational manner." *Harlen Assocs.*, 273 F.3d at 503. Because this is not a class action, each plaintiff must individually claim that because of certain enumerated defects present at the time that the C of O issued, the issuance of the C of O was arbitrary and irrational. No such allegations are found in the Complaint.

15

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Plaintiffs fail to state a claim under Title VI for several reasons.

First, plaintiffs only state that they were "targeted by the defendants because of their race, color, and national origin." (Compl. ¶ 116.)  They fail to specify to which protected category, if any, each plaintiff belongs.  Second, plaintiffs allege that they "received government funded subsidies to purchase the Townhouses." (Compl. ¶ 115.)  They fail to specify what program or activity receiving federal funding discriminated against them.  The sole mention of federal funds is the allegation that "Chase has provided federally funded mortgages to the purchasers of the Townhouses through the Central Harlem Partnership Homes." (Compl. ¶ 33.)  As an initial matter, plaintiffs stipulated to a dismissal of this claim against Chase.  In any event, Chase's only role connected with alleged federal funds was to issue loans to plaintiffs, which cannot be considered a denial of benefits or discrimination.

Finally, plaintiffs do not allege in what manner the City intentionally subjected them to discrimination or denied them benefits because of their membership in a protected category. *See New York Urban League v. New York*, 71 F.3d 1031, 1036 (2d Cir. 1995) (Section 601 "only prohibits *intentional* discrimination").  All of plaintiffs' allegations to this effect are entirely conclusory.  (*See* Compl. ¶¶ 68 (defendants "discriminated against the past and current Homeowners by fraudulently inducing them into purchasing and mortgaging defective Townhouses"); 124 (defendants "neglected their duties under the law and engage[d] in . . . blatant discriminatory conduct"); 127 (defendants "intentionally discriminated against Plaintiffs based on national origin"); 132

16

("Defendants discriminated against Plaintiffs . . . in the terms, conditions, or privileges of the sale of housing accommodations and/or the furnishing of facilities or services in connection therewith").) Most of these allegations do not even state that this "discriminatory" conduct was based on plaintiffs' membership in a protected category, whatever category that may be.

To the extent they do, such conclusory allegations, merely tracking statutory language, are insufficient to survive a motion to dismiss. *See Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988) ("If a civil rights complaint is to survive a motion to dismiss, it must make specific factual allegations indicating a deprivation of rights."); *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978) ("It is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)."). Plaintiffs have failed to satisfy even their minimal burden at the pleading stage. Therefore, the Court dismisses plaintiffs Civil Rights Act cause of action.

### III.    State Law Claims

The Court has now dismissed all federal claims, leaving only state claims against the City and defendants the Partnership and Chase. Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise pendent jurisdiction over these claims. See *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Sadallah v. City of Utica*, 383 F.3d 34, 39–40 (2d Cir. 2004) (citing *Gibbs* in directing district court to enter judgment for defendants on federal law claims and to dismiss any state law

17

claims without prejudice); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). This lawsuit is, at its center, a contract dispute between homebuyers and a developer who sold them substandard housing. Plaintiffs appear to have broadened their aim because the developer defendant declared bankruptcy. While the Court is sympathetic to the unfortunate situation in which plaintiffs find themselves, such a claim is not, as alleged, constitutional and instead belongs in state court. Accordingly, plaintiffs' remaining state law claims against all defendants are hereby dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss **[22, 26, 29]** are GRANTED and plaintiffs' Complaint is dismissed in its entirety. The Partnership's cross-motion for attorney's fees is DENIED. The Court must also consider whether to grant plaintiffs leave to amend their Complaint. *See Van Buskirk v. New York Times Co.,* 325 F.3d 87, 91 (2d Cir. 2003) ("[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint."). The Court declines to grant plaintiffs leave to amend their due process claim, as plaintiffs' injuries do not amount to a due process violation and amendment would be futile. *See Jones v. N.Y. State Div. of Military and Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) ("[A] district court may properly deny leave [to amend] when amendment would be futile."). While the Court has serious reservations whether

plaintiffs can, in good faith, correct the deficiencies in the equal protection and Title VI claims as described herein, the Court grants plaintiff leave to amend those federal claims. Plaintiffs have thirty days from the date of this Memorandum Opinion and Order to file an amended complaint. Should an amended complaint be filed and survive a renewed motion to dismiss the federal claims, the Court will at that time reconsider its ruling as to the pendent state law claims.

SO ORDERED.

Dated: New York, New York
September 14, 2007

Richard J. Holwell
United States District Judge